IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HALF PRICE BOOKS, RECORDS, MAGAZINES, INCORPORATED, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 3:02-CV-2518G |
| BARNESANDNOBLE.COM, LLC, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO AND
MOTION TO STRIKE GABRIEL M. GELB'S EXPERT REPORT**

John M. Cone
State Bar No. 04660100
Sarah M. Paxson
State Bar No. 24032826
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas 75201-4618
Telephone: (214) 969-2800
Facsimile: (214) 969-4343

ATTORNEYS FOR PLAINTIFF
HALF PRICE BOOKS, RECORDS,
MAGAZINES, INC.

# TABLE OF CONTENTS

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Bourjaily v. United States*, 483 U.S. 171 (1987) ................................................................. 1

*Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209 (1993) ............ 11

*Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993) ................................ 1, 2, 4, 6, 7, 9, 10

*General Electric Co. v. Joiner*, 522 U.S. 136 (1997) .......................................................... 2, 5

*Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320 (5th Cir. 1996) ............................................ 9

*In Re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230 (5th Cir. 1986) .................. 6

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) ........................................ 2, 4, 5, 6, 7, 9, 10

*Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291 (S.D.N.Y. 2001) ....................................... 7

*Watkins v. Telsmith, Inc.*, 121 F.3d 984 (5th Cir. 1997) ..................................................... 7, 8

*Wilson v. Woods*, 163 F.3d 935 (5th Cir. 1999) .................................................................. 1

**STATE CASES**

*Kemp v. Tysons Seafood Group, Inc.*, 2000 WL 1062105, U.S.P.Q.2d 1125 (D. Minn. 2000) ............................................................................................................................. 2

**OTHER**

FED. R. EVID. 702 .................................................................................................................. 1, 11

J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:27 (June 2001) ................................................................................................................... 4

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HALF PRICE BOOKS, RECORDS, MAGAZINES, INCORPORATED, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CAUSE NO. 3:02-CV-2518G |
| BARNESANDNOBLE.COM, LLC, | § § § | |
| Defendant. | § | |

### PLAINTIFF'S BRIEF IN SUPPORT OF ITS OBJECTIONS TO AND MOTION TO STRIKE GABRIEL M. GELB'S EXPERT REPORT

Plaintiff Half Price Books, Records, Magazines Incorporated ("Half Price Books") submits this Brief in Support of its Objections to and Motion to Strike Gabriel M. Gelb's Expert Report, submitted as Exhibit 2 in the Appendix to Defendant's Motion for Summary Judgment.

### I.
### LEGAL STANDARD FOR ADMISSIBILITY OF EXPERT TESTIMONY

A party offering expert testimony bears the burden of showing by a preponderance of the evidence that the proffered testimony is admissible. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993); *Bourjaily v. United States,* 483 U.S. 171, 175 (1987). Under FED. R. EVID. 702, expert testimony is admissible only if the "specialized knowledge will assist the trier of fact" and the testimony is based on sufficient data, utilizing reliable principles and methods that have been properly applied to the facts of the case. The trial judge must therefore ensure that the proffered testimony of an expert is not only relevant, but also reliable. *Daubert*, 509 U.S. at 589.

A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject. *Wilson v. Woods*, 163

F.3d 935, 937 (5th Cir. 1999). The specialized "knowledge" required of an expert connotes more than subjective belief or unsupported speculation, the proposed testimony must be supported by appropriate validation. *Daubert,* 509 U.S. at 590. The district court's basic responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999).[1]

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *General Electric Co. v. Joiner,* 522 U.S. 136, 146 (1997). "Both *Daubert,* and *Kumho,* make clear that the day of the expert, who merely opines, and does so on the basis of vague notions of experience, is over. Experts are now held to a level of accountability, that requires factual predicates, in historical fact, or in competent evidence, which allows a factfinder to independently verify the accuracy of the expert's results. Absent such reliable verification, the expert's opinion is not admissible." *Kemp v. Tysons Seafood Group, Inc.,* 2000 WL 1062105 at *7, 56 U.S.P.Q.2d 1125 (D. Minn. 2000).

## II.
## THE COURT SHOULD EXCLUDE THE GELB REPORT ENTIRELY

Mr. Gelb's opinions, as disclosed in the Gelb Report, do not qualify as expert testimony and the Court should reject them because:

---

[1] The *Daubert* court suggested consideration of the following factors when determining whether the testimony of an expert is reliable, including (1) whether a "theory or technique ... can be (and has been) tested"; (2) whether it "has been subjected to peer review and publication"; (3) whether, in respect to a particular technique, there is a high "known or potential rate of error" and whether there are "standards controlling the technique's operation"; and (4) whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Daubert,* 509 U.S. at 593-94.

1. Mr. Gelb does not explain, nor is it apparent from his Report, what specialized knowledge he has to support his conclusions or how his testimony would assist the finder of fact on these issues;

2. Mr. Gelb's opinions are unreliable and entirely subjective; and

3. Mr. Gelb's opinions are irrelevant and/or misleading as to the actual issues in controversy.

Even without substantively examining his Report, it is apparent that Mr. Gelb does not pass the Rule 702 threshold of being a person with specialized knowledge. Interestingly, although Mr. Gelb claims to be an "expert witness in marketing and trademark usage,"[2] his report explains nothing about the actual trademark issues in this case and his opinions are not phrased in the language of trademark law. At no point in his report does Mr. Gelb even mention the key issues here in trademark terms, that is, the distinctiveness of the mark HALF PRICE BOOKS and Defendant's fair use defense.

### A. Mr. Gelb's First And Second Opinions Are Inadmissible.[3]

Mr. Gelb's First Opinion can be broken down into two basic premises. First, Mr. Gelb asserts that "'Half-price books' is a phrase comprised of three, common generic words."[4] Second, Mr. Gelb asserts that the words "half price" combined with a product designation would not be understood by consumers to indicate a sole source.[5]

Mr. Gelb's first assertion is simply irrelevant. Whether or not any of the three words comprising the mark HALF PRICE BOOKS are generic or common as individual words is of no

---

[2] Gelb Report ("Rpt.") at 2, Def.'s App., p. 078. Mr. Gelb's "expertise" appears to be in the area of surveys, but he has not conducted a survey in this case. Rpt. at 2 and Ex. A, Def.'s App., pp. 078, 093-096.
[3] Rpt. at 3, Def.'s App., p. 079.
[4] Id.
[5] Id.

consequence. The question is how distinctive is the entire mark HALF PRICE BOOKS. 2 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 11:27 (June 2001). ("[A] composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts.") Mr. Gelb fails to explain the importance or relevance of his assertion that individual words are generic or common.

B.  **Mr. Gelb's First And Second Opinions Do Not Rest On A Reliable Foundation.**

Furthermore, Mr. Gelb has not shown that his opinions are "bas[ed] in the knowledge and experience of his discipline." *Kumho Tire*, 526 U.S. at 138 (quoting *Daubert*, 509 U.S. at 592). Mr. Gelb does not explain the facts or analysis that led him to conclude the individual words "half," "price" and "books" are common and generic. In fact, it is unclear what Mr. Gelb even means when he uses the terms "generic" and "common." Mr. Gelb fails to define "generic" anywhere his Report. Nor does he define "common." Combining with the lack of a definition, the internal inconsistencies in the Report render it impossible to discern the difference between "generic" and "common." For instance, while on page 3 in Opinion 1, Mr. Gelb states that HALF PRICE BOOKS is a "phrase comprised of three common, generic words," on page 5 of the Report he states that there is "persuasive evidence that the usage [of half-price books] is common or generic rather than source-identifying."[6] Thus on page 5, common and generic are mutually exclusive terms, while on page 2, they evidently are not.[7]

Mr. Gelb's report consists primarily of several pages of charts containing examples from search reports purporting to show third party use of several terms, including the term HALF PRICE BOOKS.[8] In evaluating Mr. Gelb's methodology, it is apparent that he does not exhibit

---

[6] Rpt. at 3, Def.'s App., p. 079; Rpt. at 5, Def.'s App., p. 081.
[7] *Id.*
[8] Rpt. at 5-13, Def.'s App., pp. 081-089.

the intellectual rigor characterized by an expert in the relevant field. *Kumho Tire*, 526 U.S. at 152. There is little to no explanation of how the material Mr. Gelb submits in his "Discussion and Analysis" section supports either of his Opinions. There is simply too large a gap between the data and the opinion offered for Mr. Gelb's opinions to be admitted under *Daubert*. *See General Electric Co.*, 552 U.S. at 136.

For example, in a section containing dictionary definitions and a thesaurus citation,[9] Mr. Gelb first purports to use three dictionary definitions to support his contention that the term "'half' is a widely recognized generic phrase for meaning at or around 50%."[10] However, even if the dictionaries do say that the word "half" means around 50%, Mr. Gelb does not explain how those three definitions support his conclusory statement that the term "half" is generic. Further demonstrating the lack of rigor in his methodology, Mr. Gelb then supports his conclusory statement that the term "'half-price' is a widely recognized generic phrase for items sold at approximately 50% off or at significant discounts" with only one dictionary definition and one thesaurus entry. Again, there is no explanation as to how this definition and thesaurus entry prove his conclusion that "half-price" is generic.[11]

The next Discussion section entitled "Generic use of 'Half-Price Books'- News Articles and Advertisements,"[12] similarly lacks explanations for its conclusions and is misleading as to the examples purporting to support those conclusions. Mr. Gelb offers his subjective beliefs that (1) the term "half-price books is used frequently" and (2) that because HALF PRICE BOOKS is

---

[9] Rpt. at 4, Def.'s App., p. 080.

[10] Notably, Mr. Gelb's statement mischaracterizes the word "half" as a phrase. Also, of the three definitions cited, the first two are definitions for the word half. However, the third definition defines, not the word "half," but the term "half pay" as "reduced pay" and therefore does not even support Mr. Gelb's contention that the word "half" means "at or around 50%."

[11] Additionally, this sparse support can hardly be characterized as showing that "half-price" is widely recognized as having any particular meaning.

[12] Rpt. at 5-9, Def.'s App., pp. 081-085.

used frequently, the term is "common or generic."[13] Not only does Mr. Gelb fail to explain how his small number of excerpts demonstrate frequent use of the term HALF PRICE BOOKS, he provides no foundation for his leap of logic that because the term is used frequently, it is common or generic. Both of Mr. Gelb's beliefs thus rely upon assumptions that are pure conjecture and are therefore inadmissible. *In Re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1235 (5th Cir. 1986) (court excluding expert testimony resting on assumption that were speculative and conjectural).

Mr. Gelb fails to explain how his beliefs are "bas[ed] in the knowledge and experience of his discipline." *Kumho Tire*, 526 U.S. at 138 (quoting *Daubert*, 509 U.S. at 592). Mr. Gelb provides no explanation as to how the excerpts he cites from articles and advertisements containing the term HALF PRICE BOOKS support either of his beliefs.[14] Mr. Gelb offers no opinion as to whether each excerpt is "generic" or whether it is "common." Again, Mr. Gelb in fact could not offer such an opinion, as he did not define the terms "common" or "generic" at any point in his Report or discuss the relevance of his conclusions regarding those terms to the issues in this case.

Mr. Gelb also does not explain how the frequency of third party use of the term HALF PRICE BOOKS is relevant to the issues of whether HALF PRICE BOOKS is a distinctive mark and whether the Defendant is using the mark in a trademark sense.[15] Even if it were relevant, examining third party uses of HALF PRICE BOOKS is something that the trier of fact can do

---

[13] Rpt. at 5, Def.'s App., p. 081.

[14] Although Mr. Gelb purports to have gathered 66 instances of the use of the term HALF PRICE BOOKS in newspaper articles and advertisements, only 29 of the instances actually reflect use of the term HALF PRICE BOOKS. Furthermore, another five instances show use of the term in another country. Clearly, use of the term in another country is irrelevant to a decision to be rendered based on U.S. trademark law. Therefore, Mr. Gelb only cites 24 instances of use of the HALF PRICE BOOKS.

[15] In fact, Plaintiff Half Price Books finds third party usage of the term HALF PRICE BOOKS in a descriptive sense perfectly acceptable and has no problems with many of the uses Mr. Gelb lists.

without the assistance of a marketing consultant. *See, e.g., Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 303 (S.D.N.Y. 2001) (court excluding supposed trademark expert who simply did what the trier of fact could have done by comparing products and store appearances to determine likelihood of confusion).

The remaining sections of Mr. Gelb's report suffer from the same defects as the first two sections discussed above. In the third section of the Discussion, Mr. Gelb states that "[t]here are numerous web sites that, like [the Defendant] use the phrase 'half-price books' in a non-trademark sense."[16] However, Mr. Gelb fails to articulate the facts, tests, and factors he used to determine that the Defendant is using the term HALF PRICE BOOKS in a non-trademark sense. Likewise, he fails to explain his considerations in determining that in each of his examples the term HALF PRICE BOOKS is being used in a non-trademark sense.[17] Notably, Mr. Gelb again fails to define a key term in his conclusion, that is what he means by non-trademark sense. Without any explicit basis or support, Mr. Gelb's conclusions should not be admitted into evidence. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 991 n.5 (5th Cir. 1997).

In the fourth section of the Discussion, Mr. Gelb concludes that Amazon.com and Half.com are using the term HALF PRICE BOOKS in a generic, non-trademark sense.[18] Again, Mr. Gelb fails to explain how his opinion is "bas[ed] in the knowledge and experience of his discipline." *Kumho Tire*, 526 U.S. at 138 (quoting *Daubert*, 509 U.S. at 592). He does not explain any facts or factors considered in drawing his conclusion of a generic, non-trademark use. Mr. Gelb also fails to explain how whether third parties use the mark HALF PRICE

---

[16] Rpt. at 9-10, Def.'s App., pp. 085-086.

[17] As with his previous chart, Mr. Gelb continues to demonstrate his unreliability by purporting to show usage of the term HALF PRICE BOOKS as listed in 17 examples in his Report. However, 5 of those instances actually do not show usage of the term, instead including additional words between PRICE and BOOKS or using the singular BOOK.

[18] Rpt. at 10, Def.'s App., p. 086.

BOOKS in a generic sense is relevant to how Defendant uses the mark. Mr. Gelb's conclusions are not only unsupported, they are irrelevant and should be excluded as not assisting the trier of fact.

In the fifth section of the Discussion,[19] Mr. Gelb does not even render an opinion and fails to explain how the list of third party uses of the term HALF PRICE BOOKS as part of various third party composite marks is remotely relevant to the issues in this case. Even worse, in the last two sections of the Discussion, Mr. Gelb provides charts showing third party use of the term "half price."[20] Not only does Mr. Gelb again opine that the term "half-price" is generic without any explanation as to how he reached that conclusion, he fails to explain how third party use of a term, "half-price," which is not the subject of this lawsuit is relevant to the issues in this case.

In short, with regard to his first two opinions, Mr. Gelb has not adequately articulated what facts, factors, tests, or law he considered in drawing his conclusions. Remarkably, in his first opinion, Mr. Gelb concludes that consumers would not understand the combining of "half price" with a product designation as indicating a sole source.[21] However, nowhere does Mr. Gelb indicate any basis to support any conclusion about consumer perception. Notably, Mr. Gelb has not performed a survey of consumers to determine perception of the mark HALF PRICE BOOKS in general or in the context in which Defendant is using it. Mr. Gelb has blatantly failed to show that his conclusion is "grounded in – [and] follows from – an expert study of the problem." *Watkins*, 121 F.3d at 991 n.11.

---

[19] Rpt. at 11, Def.'s App., p. 087.
[20] Rpt. at 12-13, Def.'s App., pp. 088-089.
[21] Rpt. at 3, Def.'s App., p. 079.

Mr. Gelb's second opinion concludes that the term HALF PRICE BOOKS is widely used to indicate books sold at a substantial discount and that the Defendant uses the term in that manner.[22] Again, Mr. Gelb cites no evidence to support this opinion and does not discuss the manner in which the term HALF PRICE BOOKS is being used in any third party use example provided in his Report, nor the manner in which Defendant is using the term. Mr. Gelb's conclusion that the Defendant uses the term HALF PRICE BOOKS in any particular manner is therefore nothing more than unsupported speculation and should be excluded. *Daubert*, 509 U.S. at 590.

### C.   Mr. Gelb's Third Opinion Is Inadmissible.

Mr. Gelb's third opinion concludes that the ubiquitous noise in the marketplace (faulty comprehension of consumers) implies that the 18 cases of actual confusion cited by Half Price Books *may not* be statistically significantly different than zero.[23] Mr. Gelb further opines that the cases of confusion were possibly tainted by "requests for comments about the lawsuit" by Half Price Books' President. Again, Mr. Gelb's opinions have no "reliable basis in the knowledge and experience of his discipline." *Kumho Tire*, 526 U.S. at 138 (quoting *Daubert*, 509 U.S. at 592).

First, Mr. Gelb provides no rational basis for concluding that there is ubiquitous noise in the marketplace. In fact, Mr. Gelb specifically notes that the one study he cites to support his conclusion studied something altogether different than the facts in the case at hand.[24] Such opinion testimony, based on a fictitious set of facts, should be excluded as pure speculation. *See, e.g., Guillory v. Domtar Indus., Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996). Second, Mr. Gelb's

---

[22] *Id.*
[23] *Id.*
[24] Rpt. at 15, Def.'s App., p. 091.

resume does not indicate that he has any expertise in statistical analysis, such that he would be qualified to determine whether something is statistically different than zero. Not surprisingly, Mr. Gelb fails to include any explanation of the statistical analysis he employed in reaching the conclusion. In fact, Mr. Gelb does not even make a statistical conclusion that might be helpful to the trier of fact, he only states that the number of cases "may not" be statistically different than zero.[25] Had he actually conducted an analysis, Mr. Gelb would have been able to make a definitive, mathematical statement as to any difference. Mr. Gelb clearly did not exhibit the requisite intellectual rigor of an expert in the field of statistics. *Kumho Tire*, 526 U.S. at 152. Finally, Mr. Gelb offers no basis for or explanation as to how the announcement of the lawsuit by Half Price Books on its web site "possibly tainted" any of the 18 cases of actual confusion.[26] Nor is there any showing that he has expertise making it proper for him to offer an opinion on the site's possible taint, or on the reliability of employee testimony.[27] No methodology or study supporting these opinions are given. Mr. Gelb's subjective beliefs do not constitute a reliable foundation for an opinion he purports to render as an expert. *Daubert*, 509 U.S. at 590.

In addition, Mr. Gelb relies on a 1982 study to support his conclusion of 30% noise in studies of confusion. The study, however, as its title suggests, had to do with miscomprehension and not confusion.[28] Mr. Gelb offers no analysis or support for his view that this the high rate of noise "is likely to hold true, to some unknown extent, to other visual stimuli."[29]

---

[25] Rpt. at 15, Def.'s App., p. 091.

[26] Rpt. at 14, Def.'s App., p. 090.

[27] *Id.*

[28] In surveys, measuring for example, likelihood of confusion, Mr. Gelb has testified to noise levels in the range of 8-10%. *See* transcript excerpt attached as Exhibit A.

[29] Rpt. at 15, Def.'s App., p. 091.

### D. Mr. Gelb's Fourth Opinion Is Inadmissible.

Mr. Gelb's fourth opinion is the culmination of the other fallacies in logic pervading his Report.[30] Combining his first three multi-faceted opinions, the reasoning behind none of which is adequately explained, does not transform unreliable, irrelevant opinions into admissible evidence. Mr. Gelb's combination of his first three opinions into one opinion is based on no methodology and is unsupported by sufficient facts to validate it as a matter of law. *Brooke Group, Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993).

### III.
### CONCLUSION

The opinions and conclusions rendered by Mr. Gelb in his Report are unsupported by explanation and are not sufficiently reliable under FED. R. EVID. 702. Furthermore, several of his opinions and conclusions are also not relevant to the issues in this case. For the reasons detailed above and in Plaintiff's Objections to and Motion to Strike Evidence Submitted by Defendant in Support of its Motion for Summary Judgment and Plaintiff's Brief in Support, Plaintiff Half Price Books respectfully requests that this Court strike the report of Gabriel M. Gelb as summary judgment evidence and strike all references to that report within Defendant's Motion for Summary Judgment.

---

[30] Rpt. at 3, Def.'s App., p. 079.

DATED January 20, 2004.

                                                 Respectfully submitted,

                                                 _____
                                                 John M. Cone
                                                 State Bar No. 04660100
                                                 Sarah M. Paxson
                                                 State Bar No. 24032826
                                                 AKIN GUMP STRAUSS HAUER & FELD LLP
                                                 1700 Pacific Avenue, Suite 4100
                                                 Dallas, Texas 75201-4618
                                                 Telephone: (214) 969-2800
                                                 Facsimile: (214) 969-4343

                                                 ATTORNEYS FOR PLAINTIFF
                                                 HALF PRICE BOOKS, RECORDS,
                                                 MAGAZINES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of January, 2004, a copy of the foregoing document was served upon the following:

| | |
|---|---|
| Todd A. Murrary<br>Vinson & Elkins L.L.P.<br>3200 Trammell Crow Center<br>2001 Ross Avenue<br>Dallas, Texas 75201-2975 | (via U.S. mail) |
| Daniel P. Waxman<br>Bryan Cave LLP<br>1290 Avenue of the Americas<br>New York, NY 10104-3300 | (via overnight) |

_____